09-5422.101-RSK                                              June 8, 2010

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

AURELIO RUIZ MARTINEZ,            )
                                  )
            Plaintiff,            )
                                  )
        v.                        )    No. 09 C 5422
                                  )
CHICAGO POLICE OFFICER SHANI SUN, )
CHICAGO POLICE OFFICER TIDWELL,   )
THE CITY OF CHICAGO, and LaPORTE  )
COUNTY SHERIFF MICHAEL F.         )
MOLLENHAUER,                      )
                                  )
            Defendants.           )

## MEMORANDUM OPINION

Before the court are (1) the motion of defendants Sun, Tidwell, and the City of Chicago (the "Chicago Defendants") to dismiss plaintiff's complaint pursuant to Rule 12(b)(6); and (2) Sheriff Mollenhauer's motion to dismiss plaintiff's complaint for improper venue and lack of personal jurisdiction. For the reasons explained below we deny the Chicago Defendants' motion and grant Sheriff Mollenhauer's motion.

## BACKGROUND

On September 1, 2007 Aurelio Martinez was a passenger in a motor vehicle driven by his wife on the Indiana Tollway in LaPorte County, Indiana. (Compl. ¶ 8.) An Indiana state trooper stopped them because, he explained, the vehicle's license plate registration sticker had expired the day before. (Id. at ¶¶ 9-10.)

- 2 -

In fact, Martinez's wife had renewed the registration but had
forgotten to affix the sticker to the license plate. (Id. at ¶
11.)  She had the registration sticker in the car and showed it to
the officer, who nevertheless required her and her husband to
produce identification. (Id.)  The trooper then took Martinez into
custody on a 1981 warrant for the arrest of "Aurelio Martinez"
issued by the Circuit Court of Cook County, Illinois. (Id. at ¶
12.) Although Martinez and the individual named in the warrant
share the same name, they are not the same person.  Martinez told
the officer that he immigrated to this country in 1989 — eight
years after the Illinois court issued the warrant — and had been
erroneously detained on the same warrant in 1999. (Id. at ¶ 13.)
On that prior occasion the confusion was resolved "promptly" and
Martinez had been released within an hour of being stopped. (Id.
at ¶¶ 13, 18.)  The state trooper told Martinez and his wife that
they should take the matter up with the Chicago Police Department.
(Id. at ¶ 14.)

The state trooper delivered Martinez to the LaPorte County
Jail where he was held from September 1, 2007 until September 18,
2007, despite repeatedly protesting his innocence. (Id. at ¶ 15.)
Meanwhile, his wife attempted to rouse the Chicago Police
Department to do something about her husband's detention.  She
traveled to Chicago on September 2, 2007 and spoke to defendant
Tidwell, the officer responsible for warrants and extradition.

- 3 -

(Id. at ¶¶ 16, 18.)   She showed Tidwell her husband's resident alien documentation, his social security card, his Mexican identification card, his passport, his current employment information, and his employment history dating back to 1989.  (Id. at ¶ 17.)   Tidwell accepted the documents and told Martinez's wife that he would pass them along to his supervisor.  (Id. at ¶ 19.) Thereafter Martinez's wife was in daily contact with the Chicago Police Department, by telephone or in person.  (Id. at ¶ 20.)   On at least seven different occasions during this period Martinez's wife spoke with defendant Sun and asked her to arrange to have her husband picked up and delivered to Illinois for a hearing.  (Id. at ¶¶ 20-22.)  What Sun actually did about her requests is unclear at this point, although the complaint alleges that she did not take the matter seriously.   (Id. at ¶ 23 (alleging that Sun told plaintiff's wife that it would "take as long as it takes," that there was "no emergency," and that "if you keep calling, it will just take longer.").   Martinez spent 17 days in jail before a Chicago police officer showed up and transported him to Illinois. (Id. at ¶ 24.)  The following day, September 19, 2007, Martinez was brought before a Cook County judge — evidently his first appearance before a judge since he had been picked up – and was promptly released on a recognizance bond.  (Id. at ¶ 25.)  On October 10, 2007, Martinez was discharged and the court entered an order

- 4 -

indicating that Martinez was not the person sought by the warrant.
(Id. at ¶ 26.)

Martinez has filed a three-count complaint requesting damages
under 42 U.S.C. § 1983 stemming from his detention.  In Count I he
claims that Sun and Tidwell violated his rights under the Fourth
and Fourteenth Amendments by failing to conduct a "reasonable
investigation" into his claim of innocence and failing to assure
that he was picked up and brought before a judge in a "reasonable
time" following his arrest.  In Counts II and III plaintiff claims
that the City of Chicago and Sheriff Mollenhauer, respectively,
maintain policies of ignoring "all complaints of mistaken
identity."

## DISCUSSION

A.   **Personal Jurisdiction**[1]

In federal question cases the relevant due process inquiry is
whether the defendants have sufficient contacts with the United
States as a whole.  Diamond Mortg. Corp. of Illinois v. Sugar, 913
F.2d 1233, 1244 (7th Cir. 1990) (collecting cases).   It is

---

[1]/  Mollenhauer asks us to take the venue question first, reversing the
usual order.  See, e.g., Circle Group Internet, Inc. v. Atlas, Pearlman, Trop &
Borkson, P.A., No. 01 C 7338, 2002 WL 1559637, *1 (N.D. Ill. July 16, 2002)
(considering venue first to avoid a "somewhat complicated" personal-jurisdiction
issue).  But we do not believe that his venue objection has merit, at least as
it concerns the "civil action" as a whole.  See 28 U.S.C. § 1391. The Chicago
Defendants' conduct in Illinois is plainly a substantial basis of Martinez's
lawsuit.  Id.  There is authority for severing a claim (under Fed. R. Civ. P. 21)
and then transferring the severed claim pursuant to 28 U.S.C. § 1404(a).  See,
e.g., Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1518-19
(10th Cir. 1991) (collecting cases).  But Mollenhauer has not requested such
relief.

difficult to imagine how any domestic defendant could fail to satisfy this test.   But Martinez must still establish that Mollenhauer is amenable to service of process.  Id.  Some federal statutes authorize nationwide service of process, see, e.g., id. (applying Bankr. R. 7004(d)), but "§ 1983 is not one of them."  See Kinslow v. Pullara, 538 F.3d 687, 690 (7th Cir. 2008).  We turn then to Rule 4(k)(1)(A), which provides that service is effective over any defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."  Fed. R. Civ. P. 4(k)(1)(A).  Illinois' long-arm statute authorizes personal jurisdiction to the full extent permitted by the federal Constitution.  See 735 ILCS § 5/2-209(c).  And because our Court of Appeals has not found "any operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction," a single constitutional inquiry will suffice.  See Kinslow, 538 F.3d at 691 (citation and internal quotation marks omitted).  So, we come in a roundabout way to the question of the defendant's contacts with Illinois.   Id. at 690-91; see also International Shoe Co. v. Washington, 326 U.S. 310 (1945).

Martinez has sued Mollenhauer in his official capacity, making this in effect a suit against his department.  See Burton v. Lacy, No. 1:07-cv-0918-JDT-TAB, 2008 WL 187552, *4-5 (S.D. Ind. Jan. 18, 2008).   Although Mollenhauer's affidavit recites his lack of

personal contacts with Illinois, (see Mollenhauer Aff., attached as
Ex. A to Mollenhauer's Mem., ¶¶ 7-9), he acknowledges in his
memoranda that his subordinates' contacts are also relevant. (See,
e.g., Mollenhauer Reply at 2-3.)   Martinez has not expressly
alleged any contacts between any members of Mollenhauer's
department and anyone in Illinois.   But it is a common-sense
inference from the complaint's allegations that officials in the
two states communicated to arrange Martinez's extradition.
Mollenhauer argues that this is not enough, citing Kinslow.   The
district court in Kinslow concluded that "two or three phone calls"
between prison officials in New Mexico with their counterparts in
Illinois were insufficient to establish personal jurisdiction in a
lawsuit arising from the plaintiff's prison transfer.   See Kinslow
v. Transcor America, LLC, No. CIV A 06 C 4023, 2006 WL 3486866, *4-
5 (N.D. Ill. Dec. 1, 2006).   Our Court of Appeals affirmed
dismissal because the plaintiff failed to specify each individual
defendant's contacts with Illinois, treating them instead as a
group.   Id. at 692-93.  But the Court was skeptical of the district
court's conclusion that the phone calls were too insubstantial:
"[t]here are cases holding that 'one business transaction related
to the cause of action is clearly a sufficient basis for
jurisdiction.'"   Id. at 692 (quoting Heritage House Rests., Inc. v.
Cont'l Funding Group, Inc., 906 F.2d 276, 281 (7th Cir. 1990)).

The larger hurdle in this case is finding a sufficient connection between the department's presumed contacts with Illinois and Martinez's claim to make a lawsuit in this state "foreseeable." See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) ("[T]he foreseeability that is critical to due process analysis is . . . that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."). An Indiana state trooper stopped an Indiana resident and delivered him to an Indiana jail where he spent 17 days. While he was held there jail officials allegedly ignored his repeated protests that he was innocent pursuant to a policy established by Sheriff Mollenhauer. Then, a Chicago police officer arrived in Indiana to transport Martinez to Illinois. Communicating with Illinois officials, and releasing Martinez into the custody of a Chicago police officer, did have some eventual consequences in Illinois: Martinez was brought before a judge in Cook County and released on bond. But those activities have nothing to do with Martinez's Monell claim, which is instead based upon Mollenhauer's alleged policies concerning individuals detained in his jail. It was fortuitous that this particular detainee was (apparently) wanted on a warrant issued by an Illinois court. We conclude that a lawsuit in Illinois was not a foreseeable consequence of the LaPorte Sheriff Department's presumed contacts with Illinois.

**B.   Failure to State a Claim Under Rule 12(b)(6)**

- 8 -

The Chicago Defendants contend that Martinez's complaint does not state a claim under § 1983.  The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits.  5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004). Under federal notice-pleading standards, a complaint need not contain "detailed factual allegations," but it must have more than mere "labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A plaintiff is obligated to provide the factual grounds of his entitlement to relief, and a "formulaic recitation" of the elements of a claim will not do.  Id.  The complaint must contain sufficient facts to raise a plaintiff's right to relief above a "speculative" level, id. at 555, and the claim must be "plausible on its face," id. at 570.   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  When evaluating a motion to dismiss a complaint, we must accept as true all factual allegations in the complaint, but not its legal conclusions.  Id. at 1949-50.

We agree with the defendants that two categories of legal authority are relevant here: mistaken-identity cases (see Baker v. McCollan, 443 U.S. 137 (1979)) and extradition cases (see Sivard v. Pulaski County, 17 F.3d 185 (7th Cir. 1994)).  But we disagree that these authorities require dismissal.  The Baker Court held that the

plaintiff's three-day detention over a holiday weekend pursuant to a facially valid warrant for the arrest of a different person using his identity did not state a constitutional claim. See Baker, 443 U.S. at 144 ("Respondent was indeed deprived of his liberty for a period of days, but it was pursuant to a warrant conforming, for purposes of our decision, to the requirements of the Fourth Amendment."). The Court also noted, however, that cases involving longer detentions might violate the Fourteenth Amendment's due process clause:

> Obviously, one in respondent's position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment. For the Constitution likewise guarantees an accused the right to a speedy trial, and invocation of the speedy trial right need not await indictment or other formal charge; arrest pursuant to probable cause is itself sufficient. We may even assume, *arguendo*, that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of "liberty . . . without due process of law." But we are quite certain that a detention of three days over a New Year's weekend does not and could not amount to such a deprivation.

Id. at 144-45 (internal citations and footnote omitted). Applying Baker our Court of Appeals has held that lengthy detentions pursuant to a valid warrant, but without an appearance before a judge, may violate the Fourteenth Amendment. See Coleman v. Frantz, 754 F.2d 719, 723 (7th Cir. 1985) ("We hold that an eighteen-day detention without an appearance before a judge or magistrate was a deprivation of liberty without due process of

law."); see also Brown v. Patterson, 823 F.2d 167, 169 (7th Cir.
1987) ("[A] prolonged confinement of an arrested person without a
hearing to determine whether he is the person named in the warrant
would be a deprivation of liberty without due process of law and
thus violate the Fourteenth Amendment."); Armstrong v. Squardito,
152 F.3d 564, 569-573 (7th Cir. 1998) (similar).  In Johnson v.
City of Chicago, 711 F.Supp. 1465, 1470 (N.D. Ill. 1989) Judge
Moran succinctly summarized these authorities: "a prolonged
detention, coupled with the failure to investigate a claim of
mistaken identification, may suggest a deprivation of liberty
without due process." Cf. Patton v. Przybylski, 822 F.2d 697, 700-
01 (7th Cir. 1987) (affirming dismissal on the facts of that case
but noting that "to arrest a person over his vigorous protest that
he is the wrong man — a protest given some credibility in this case
by the driver's license — and keep him in jail for this period
without either investigating the case or bringing him before a
magistrate raises serious constitutional questions . . . .").[2]

But unlike the plaintiffs in the just-cited cases, Martinez
was held in Indiana pursuant to a warrant issued by a court in

_____

[2]  Martinez refers throughout his complaint to the "Fourth Amendment to
the Constitution of the United States, made applicable to the states through the
Fourteenth Amendment." (Compl. ¶¶ 29, 32, 34.)  But he is not challenging his
initial seizure: he has not named the arresting officer as a defendant and he has
not alleged that the warrant was facially invalid.  But a lawful arrest, which
would doom state and federal claims for false imprisonment, does not necessarily
preclude a § 1983 claim for subsequent wrongful detention.  See Baker, 443 U.S.
at 144-45; Sivard v. Pulaski County, 959 F.2d 662, 665 (7th Cir. 1992).
Martinez's claim for wrongful detention after his arrest pursuant to a facially
valid warrant arises under the Fourteenth Amendment, rather than the Fourth.  See
Johnson, 711 F.Supp. at 1470; see also Gray v. Cuyahoga County Sheriff's
Department, 150 F.3d 579, 583 (6th Cir. 1998).

another state.  In <u>Sivard v. Pulaski County</u>, 17 F.3d 185, 187, 190 (7th Cir. 1994) Illinois police officers arrested the plaintiff without a warrant and held him for 17 days without a court appearance pursuant to Massachusetts' oral request for his extradition.  Sivard alleged that his detention violated the Fourth Amendment, relying on <u>Gerstein v. Pugh</u>, 420 U.S. 103 (1975). <u>Gerstein</u> "requires a prompt judicial determination of probable cause as a prerequisite to an extended pre-trial detention following a warrantless arrest."  <u>Sivard</u>, 17 F.3d at 190.[3]  But the <u>Gerstein</u> Court "expressly declined to extend its holding to defendants who had been indicted."  <u>Id.</u> (citing <u>Gerstein</u>, 420 U.S. at 118 n. 19).  Sivard was indicted in Massachusetts on kidnaping charges several years before his arrest in Illinois.  The question, as the <u>Sivard</u> Court framed it, was "whether the Massachusetts indictment, which would have been sufficient for officials of Massachusetts to detain Sivard for seventeen days without an initial appearance before a judicial officer, was also sufficient for the Pulaski County Sheriff's Department to detain Sivard in the same circumstance."  <u>Id.</u>  The Court looked to the law of extradition for guidance.  In <u>Michigan v. Doran</u>, 439 U.S. 282, 290 (1978) the Supreme Court, applying the Extradition Clause of the Constitution, stated that "when a neutral judicial officer of the demanding state has determined that probable cause exists, the

---

[3]  Massachusetts officials eventually issued a warrant for Sivard's arrest, although by that time Sivard had appeared before an Illinois judge for his initial appearance.  <u>Sivard</u>, 17 F.3d at 187.

courts of the asylum state are without power to review that determination." The <u>Sivard</u> Court construed <u>Doran</u> to cast "serious doubt on the applicability of <u>Gerstein</u> to a detention of an indicted fugitive pursuant to an oral extradition request . . . ." <u>Sivard</u>, 17 F.3d at 191. Without actually deciding that question, the Court concluded that the defendants were entitled to qualified immunity because <u>Gerstein</u> did not "clearly establish that Sivard's detention violated the Fourth Amendment." <u>Id.</u>

Martinez was not a "properly-indicted fugitive" — he was an innocent person held for 17 days pursuant to a facially valid warrant. His claims stemming from his detention arise under <u>Baker</u> and its progeny, not <u>Gerstein</u>. And so the question remains, what effect does the out-of-state warrant have on those claims? In <u>Gray v. Cuyahoga County Sheriff's Department</u>, 150 F.3d 579, 582-83 (6th Cir. 1998) the court, applying <u>Baker</u>, concluded that an individual mistakenly held on an out-of-state warrant for more than 30 days stated a Fourteenth Amendment claim. The plaintiff in <u>Gray</u> — the victim of an identity theft — matched the person described in the warrant and related documents in nearly every respect, including fingerprints. <u>Id.</u> at 581. He was in fact a different person, and he argued that the defendants — two sheriff's deputies at the jail where he was detained — could have promptly resolved the confusion if they had only compared his booking photograph with the photograph accompanying the warrant. <u>Id.</u> at 582-83. On these facts the court concluded that "the trier of fact could find that

the failure by [the defendants] to ascertain that they were holding the wrong person violated Gray's due-process rights under the Fourteenth Amendment." Id. at 583. Gray speaks more directly to the liability of individuals in the asylum state, but we think its reasoning is generally applicable here: the Fourteenth Amendment applies to individuals wrongfully detained for extended periods of time pursuant to out-of-state warrants.

Martinez was held in jail much longer than the plaintiff in Baker: 17 days versus 3. See Johnson, 711 F.Supp. at 1470 (holding that a six-day detention was sufficiently long to state a claim under the Fourteenth Amendment). And he alleges that Sun and Tidwell deliberately ignored information indicating his innocence and "[u]nreasonably delayed [his] appearance before a judge." (Compl. ¶ 28); see Johnson, 711 F.Supp. at 1470 ("The arrest and six-day detention of Johnson on the basis of his name alone — without even minimal steps to determine whether they had the right person — presents a sufficient basis for finding deliberate indifference to Johnson's rights secured by the Fourteenth Amendment."). The Chicago Defendants contend that they can only be liable (if at all) for the period of time during which Martinez was in their custody. (Chicago Defs.' Reply at 8, 10.) As they point out, the Baker majority focused (albeit without any discussion or analysis) on the three days during which the plaintiff was in defendants' custody and not the four days during which he was held by a different police department. See Baker, 443 U.S. at 141. But

- 14 -

we do not read <u>Baker</u> to mean that as a matter of law a defendant cannot be held liable under the Fourteenth Amendment for the period of time during which the plaintiff is in a third party's physical custody.   Martinez plausibly alleges that the defendants' deliberate indifference lengthened his detention and that is all that he is required to do at this stage of the case.   Our decision in <u>Hernandez v. City of Chicago</u>, No. 99 C 6441, 2001 WL 128246 (N.D. Ill. Feb. 9, 2001) is not to the contrary.   In that case the plaintiff sued two defendants for issuing the warrant that eventually led to his mistaken arrest.   <u>Id.</u> at *10.   We held that the connection between the defendants' conduct and plaintiff's arrest was too remote to support liability.   <u>Id.</u>   Here, it is a reasonable inference from the complaint's allegations that Martinez would have been released sooner if the defendants had acted more quickly in the face of information indicating Martinez's innocence.[4]   Defendants respond that they are only "ministerial" employees, and that 17 days was a "reasonable" amount of time to process his extradition.   (Chicago Defs.' Mem. at 7-8, 12.)   These sorts of factual questions are not appropriately resolved at this stage of the case.   In sum, we conclude that Martinez has sufficiently pled a § 1983 claim against defendants Tidwell and Sun.[5]

_____

[4]   Just how persuasive that information was under the circumstances is beyond the scope of defendants' Rule 12(b)(6) motion.

[5]   Tidwell and Sun also assert qualified immunity, citing the existence of a facially valid warrant. (Chicago Defs.' Mem. at 13-14.)   Again, a facially valid warrant does not necessarily justify a prolonged detention.   The qualified-immunity question will have to await further factual development.   <u>Blunt v. Becker</u>, No. 08 C 7157, 2010 WL 570489, *4 (N.D. Ill. Feb. 16, 2010) ("A complaint

- 15 -

The Chicago Defendants' sole argument in their opening brief for dismissing Martinez's <u>Monell</u> claim was his purported failure to plead a "constitutional injury" caused by Sun and Tidwell. (Chicago Defs.' Mem. at 14-15.)   For the reasons we have just explained we conclude that he has stated a Fourteenth Amendment claim against the individual defendants.   In their reply brief defendants argue for the first time that Martinez's lengthy detention was "due to the extradition process between the State of Indiana and the State of Illinois" and not Chicago's own policies. (Chicago Defs.' Reply at 10.)   Arguments raised for the first time in a reply brief are waived.   <u>United States v. Adamson</u>, 441 F.3d 513, 521 n.2 (7th Cir. 2006).   Moreover, the content and application of the laws governing extradition are undeveloped at this point.   What role the defendants play in processing extraditions remains to be seen.

## **CONCLUSION**

Sheriff Mollenhauer's motion to dismiss (13) is granted and he is dismissed for lack of personal jurisdiction.   The Chicago Defendants' motion to dismiss (18) is denied.   A status hearing is set for June 16, 2010 at 10:30 a.m.

is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds because an immunity defense usually depends on the facts of the case.").

DATE:       June 8, 2010


ENTER:      _____
            John F. Grady, United States District Judge